Filed 3/9/23  P. v. Mejia CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B313960 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA318905) |
| JOSUE MANUEL MEJIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Charlaine F. Olmedo, Judge.  Affirmed.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Josue Manuel Mejia appeals from the denial of his petition for resentencing pursuant to Penal Code section 1170.95. During the pendency of this appeal, former section 1170.95 was renumbered as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) We refer to the statute only by its new designation for clarity.

We affirm.

## BACKGROUND

In the early morning hours of October 12, 2005, defendant and four fellow 18th Street gang members (Jesus Lorenzo, Adam Perez, Edwin Caseros and Carlos Hernandez) went to the home of a rival gang member (Leonardo Pulido) with whom codefendant Perez had a long and contentious history. After unsuccessfully trying to get Pulido to come outside, defendant and his accomplices went around to the back of Pulido's apartment building, repeatedly threw rocks at Pulido's bedroom window, and then attempted to scale the wall and climb into the apartment through the window. Lorenzo, who was armed and the first to attempt to get into the apartment, climbed part of the way through the bedroom window and was shot and killed by Pulido. Before defendant and his accomplices fled the scene, several shots were fired at Pulido's apartment. Shell casings found outside the apartment matched the handgun found near defendant upon his arrest a short distance from the scene. It was later determined that Lorenzo's blood was on the clothes defendant was wearing at the time of his arrest.

In 2010, defendant, Perez, Caseros and Hernandez were prosecuted for the first degree murder of Lorenzo on a provocative act theory, the premeditated attempted murder of Pulido, attempted residential burglary and shooting at an inhabited dwelling. The jury convicted defendants and his accomplices on

2

all counts and found true a gang-murder special-circumstance allegation, as well as gang and firearm use allegations. Defendant was sentenced to 47 years to life, plus 40 years in prison.

In 2012, this court, in a published decision, struck and reduced certain statutory fines and fees, but otherwise affirmed defendant's conviction, as well as the convictions of his surviving three accomplices. (*People v. Mejia* (2012) 211 Cal.App.4th 586 (*Mejia*).)

In the fall of 2018, Senate Bill 1437 (2017–2018 Reg. Sess.) was passed, amending Penal Code sections 188 and 189 to narrow accomplice liability for felony murder and eliminate the natural and probable consequences doctrine as it relates to murder. (Stats. 2018, ch. 1015, § 2, § 3.) Senate Bill 1437 also added section 1172.6 which sets forth a procedure for individuals convicted of felony murder or murder under a natural and probable consequences theory to petition for resentencing. (Stats. 2018, ch. 1015, § 4.)

In early 2019, defendant filed, in propria persona, a petition for resentencing alleging he was not the actual killer, that he was convicted as an accomplice under theories of felony murder and the natural and probable consequences doctrine, and he could not be convicted of murder under the amended murder statutes. The trial court granted defendant's request for appointed counsel and received briefing from the parties.

On April 5, 2019, the court held a hearing at which counsel and defendant were present. Counsel submitted on their paperwork. The court referred to its earlier denial of the petition for resentencing filed by codefendant Perez, saying it was denying defendant's petition on the same bases. The court said "defendant was convicted under the provocative act murder theory of liability,

and the Court of Appeal specifically found that defendant harbored express malice. In this case, because the jury convicted defendant of first degree murder, they necessarily found that the murder was willful, deliberate and premeditated."

The trial court quoted several times from our opinion in *Mejia*, including that "the evidence was overwhelming that each [accomplice] arrived at the scene that night for the purpose of killing or assisting in the killing of [Pulido]." (*Mejia, supra,* 211 Cal.App.4th at p. 621.) The court also found it significant the jury had been instructed that in order to find defendant guilty of attempted residential burglary, they had to find that he harbored a specific intent to kill, and the jury had in fact convicted defendant of residential burglary.

The court concluded by saying that "[b]ased upon the Court of Appeal's specific finding that defendant's murder conviction was necessarily based on express malice and provocative act murder, this court finds that the defendant does not qualify for the relief requested, and the petition is denied."

Defendant's appointed counsel failed to timely file a notice of appeal on his behalf. Defendant subsequently filed, in propria persona, another petition seeking resentencing on the same grounds as his first petition. Without appointing counsel or accepting briefs, the court denied defendant's second petition, referring to its denial of defendant's "identical" first petition.

On August 10, 2021, we granted defendant's application for relief from default for failing to timely appeal the denial of his petition for resentencing. We grant defendant's request to take judicial notice of the jury instructions from the 2010 trial.

## DISCUSSION

Defendant argues the trial court improperly denied his petition at the prima facie stage by erroneously relying on the factual and legal analysis from this court's prior opinion in *Mejia.* He says he is entitled to an evidentiary hearing pursuant to Penal Code section 1172.6, subdivision (d) because the record of conviction does not establish as a matter of law he is ineligible for relief. He says the jury may have relied on the now invalid natural and probable consequence theory to convict him or, even assuming the jury relied on provocative act murder, his liability as a nonprovocateur accomplice is based on imputed malice and therefore invalid in light of the amendments effected by Senate Bill 775 (2021–2022 Reg. Sess.). Finally, defendant argues the changes to the gang enhancement statute effected by Assembly Bill 333 (2021–2022 Reg. Sess.) make it unlikely he could be convicted of murder under current law because the prosecution could not establish intent to kill based on a gang motive.

We conclude the record of conviction conclusively establishes defendant's ineligibility and therefore affirm the denial of his petition. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101 [appellate court reviews de novo the denial of a resentencing petition at the prima facie stage].)

1. **Any Error by the Trial Court in Relying on *Mejia* Was Harmless.**

In *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*), the Supreme Court described the trial court's prima facie inquiry as "limited." *Lewis* says the trial court must accept as true the allegations in the defendant's petition and should not reject those allegations " 'on credibility grounds without first conducting an evidentiary hearing.' " (*Ibid*.) *Lewis* instructs however that the

5

court's review at the prima facie stage may nonetheless include consideration of the record of conviction from which a finding of ineligibility may be made as a matter of law. " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

*Lewis* cautioned the " 'prima facie bar was intentionally and correctly set very low.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) In reviewing any part of the record of conviction, including a prior appellate opinion, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*)

Penal Code section 1172.6, as amended by Senate Bill 775, now provides that the court may consider the "procedural history" of a prior appellate opinion at an evidentiary hearing pursuant to subdivision (d)(3). At least one court has concluded that this statutory language also necessarily applies at the prima facie stage; the appellate opinion affirming a conviction is not part of the record of conviction; and the factual summary in the appellate opinion may not be considered at either the prima facie stage or the evidentiary hearing. (*People v. Flores* (2022) 76 Cal.App.5th 974, 987–988.)

Whether or not the trial court erred by relying on more than the procedural history recited in *Mejia* at the prima facie stage, any such error was harmless. We find, based on our independent review of the jury instructions and verdict, which are part of the record of conviction, that defendant is ineligible for resentencing relief.

## 2. The Jury Instructions and Verdict Conclusively Establish Defendant's Ineligibility for Relief.

Defendant concedes the trial court had the authority to rely on the jury instructions and the verdict to deny relief at the prima facie stage but contends that they do not conclusively establish his ineligibility. We disagree.

The Legislature amended the murder statutes " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, *or* was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f) . . . .)' " (*People v. Strong* (2022) 13 Cal.5th 698, 707–708, italics added.)

To effectuate this goal, Penal Code section 1172.6 was enacted to provide a means for individuals convicted under the former law to petition for relief. As originally enacted, Senate Bill 1437 limited the right to resentencing relief to those individuals convicted of murder under the felony-murder rule or the natural and probable consequences doctrine. (*Lewis, supra,* 11 Cal.5th at p. 957.) The Legislature subsequently passed Senate Bill 775 which, as relevant here, expanded the scope of those authorized to file resentencing petitions to include individuals convicted of murder "under any theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551.)

Defendant contends it cannot be ruled out that the jury convicted him of the murder of Lorenzo based on a theory of imputed malice. Not so. Looking at the entire charge to the jury and the verdict forms, the record conclusively demonstrates the jury found defendant guilty of participating in the charged crimes,

7

including the murder of Lorenzo, with express malice, i.e., intent to kill.

The attempted murder instruction (CALJIC No. 8.66) told the jury that to find a defendant guilty of the attempted murder of Pulido, they must conclude the defendant "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

The attempted residential burglary instructions also required the jury to find defendant acted with the intent to kill. CALJIC No. 14.50 was modified to read that every person who enters any building or inhabited dwelling house "with the specific intent to commit murder" is guilty of burglary. CALJIC No. 14.54 told the jurors that "[i]n order for an accused to be guilty of burglary as an aider and abettor, he must have knowledge of the perpetrator's unlawful purpose and must have formed the intent to commit, encourage or facilitate commission of the crime before the perpetrator's final departure from the structure."

The jury was also correctly instructed that to be guilty of aiding and abetting, a defendant must have knowledge of the direct perpetrator's unlawful purpose, intend to encourage or facilitate commission of that crime, and by act or advice actually aid or facilitate that crime. (CALJIC No. 3.01.) And, they were instructed with CALJIC Nos. 1.01, 1.11, 17.00 and 17.02 which told them to consider the instructions as a whole, that any reference to "defendant" in any jury instruction applied to each defendant unless the instruction said otherwise, and that they were required to decide the guilt of each defendant separately from every other defendant and separately as to each count and special circumstance.

These instructions, viewed collectively, required the jury to find that each defendant formed the specific intent to murder Pulido *before* Lorenzo attempted to gain entry through the bedroom window, which resulted in Lorenzo being fatally shot. The jury concluded that defendant and each of his three surviving accomplices were guilty of the attempted murder of Pulido and attempted residential burglary. The jury therefore necessarily concluded that any defendant who did not himself take a provocative act that resulted in Lorenzo's death, nevertheless aided and abetted the surviving provocateur defendant in the commission of the underlying crimes with the intent to kill. One who acts with intent to kill is not entitled to relief.

We reject defendant's contention that accomplice liability under a provocative act theory is based on imputed malice. As the Supreme Court has made clear, a murder conviction under the provocative act doctrine "requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655; accord, *People v. Mancilla* (2021) 67 Cal.App.5th 854, 867–868.) We also reject defendant's suggestion the passage of Senate Bill 775 effectively eliminated accomplice liability for provocative act murder. Defendant does not cite authority or persuasive argument so holding.

3.    **Assembly Bill 333**

Defendant also contends the passage of Assembly Bill 333 warrants a reversal and remand for an evidentiary hearing. Defendant concedes he is not seeking ameliorative relief directly under Assembly Bill 333. Rather, he says it is relevant to the question of whether he could be convicted of murder under current

9

law because the prosecution could not establish intent to kill based on the alleged gang motive.

We do not agree. The changes effected by Assembly Bill 333 concern gang allegations pursuant to Penal Code section 186.22. The amendments have no effect on the use of gang evidence relevant to a charged offense. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 [evidence of a defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime]; accord, *People v. Ramirez* (2022) 13 Cal.5th 997, 1095 [evidence of gang membership is admissible on the charged offense assuming its probative value outweighs prejudice].) The gang evidence presented at trial that was relevant to motive and intent would still be admissible under current law, irrespective of whether any gang enhancement was pursued.

## DISPOSITION

The order denying defendant and appellant Josue Manuel Mejia's petition for resentencing is affirmed.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.


10